Today I will address the sole issue on appeal, which is the illegal forfeiture order in this case. No other aspect of the sentence is at issue. And there's no dispute that Honeycutt, the controlling forfeiture case, issued before sentencing, it controlled its sentencing, and it's not a new issue. It wasn't applied at sentencing, and that plain-error review might apply to this issue. And the defendant meets the plain-error standard, the four prongs. Kagan Are you going to address the waiver question? Villegas Yes. That's the first prong of a plain-error review, is whether the right has been relinquished or waived. And here the plea waiver does not bar appellate review of this issue because the forfeiture order is illegal under Honeycutt. It's kind of fuzzy about, you know, what does — it is true that we have cases, let's say, that an illegal — an illegal punishment is an exception. But, I mean, most of what people are complaining about is in some sense an illegal — you know, an illegal conviction, right, or an illegal punishment. So here, it's not like — it's rather fine-cut what's making it illegal, right? Villegas What makes this illegal here is it exceeds the statutory penalty. So here, under Honeycutt, the forfeiture statutes can only disgorge the amount of money the defendant actually obtained. And that changed considerable precedent in all the circuits. Before then, it was just the amount of proceeds, and it was a very liberal standard with conspiracy liability under Pinkerton and that. So what Honeycutt did, it limited it to only what the defendant obtained. And here, the forfeiture order is more than what the defendant obtained. And we know this because the co-defendants where Honeycutt was applied to their sentencing — Sotomayor The co-defendants each had Honeycutt consideration, and their forfeiture was reduced to a million and change, I think, correct? Villegas Yes. It was a million six for one co-defendant and about 600,000 for the other co-defendant. So about two and a quarter — Sotomayor They don't send this back. This would be the only one of the three that was in effect being victimized. Villegas Correct. Because he was the latest — the last to plead, but he was the first to be sentenced. And unfortunately, it seems through inadvertent mistake that the attorneys below didn't raise Honeycutt, which had issued just a few weeks before the sentencing hearing. And so the Honeycutt case was brought up in the other co-defendants' cases who had both pled under the same plea agreements as Viejas had. So because the order exceeds the statutory penalty, the substance of the statute, that's what makes it illegal. It's not simply a factual dispute where the correct legal standard was applied, but the parties disagree about. That would be just a factual dispute. Here, it's that the legal standard itself was not applied. And so that makes the forfeiture order illegal. And it makes the error clear and obvious under Honeycutt. The third prong of plain error review is that it substantially affects the defendant's rights, meaning there's a reasonable probability on remands that the outcome would be different, which, again, we know that the co-defendants were found to obtain 2.3 million of these total about 5 million in proceeds. So it is likely that his forfeiture order will be lower than the 5.2. It could be about 3 million, 2.5 million, thereabouts. Somewhere around there. It seems the parties worked out before the other sentencings how much was obtained. And I expect that would happen here on remand. And then the Supreme Court recently addressed plain error review at sentencing in Rosales-Morales. And that held that errors in sentencing, plain errors in sentencing, should go back, should, there's often missed errors with the complexity of federal sentencing. Well, that, in fact, relied very heavily on the guidelines, so it isn't particularly applicable here. But I don't think it matters a lot, but I don't think it is particularly applicable here. Yes, it did address the guidelines in that case. Counsel, Judge Gould, if I could interject a question. Assuming that we're going to the district court as to a particular amount, or what would be your suggested language of remand? We ask for limited remand for a new forfeiture order. We would ask that it be instructed to determine the amount of property actually obtained by Villegas under Honeycutt. I don't think there's enough in the record to make that factual finding. Now, on appeal, it needs to go back for the parties to either come to an agreement, you know, or have a hearing about forfeiture. Okay. Thank you. Thank you. And unless this Court has any more questions, I'll save my remaining time. Thank you. Good morning. May it please the Court. Elizabeth White for the United States. Good morning, counsel. Well, it's not your fault that you get undercut by Honeycutt. You have nothing to do with that. Actually you're a victim of circumstance to some extent. No, I don't. I don't. I don't think that Honeycutt – I don't think that there is any Honeycutt error in this case, and I'll tell you why. What – if you look – in particular, if you look at the example, the hypothetical that Justice Sotomayor gave in Honeycutt, right, you've got the mastermind farmer who makes $3 million cultivating and selling marijuana, and the college student who delivers it for him makes $3,600. And the two of them get convicted of conspiracy. What Honeycutt said is that you can't hold the college student jointly and severally liable for $3 million because he never obtained $3 million. You can only – you can only hold him to forfeit the $3,600 that he obtained. But what Honeycutt – the issue in Honeycutt wasn't the reverse, which is what the issue is here. How much does the mastermind farmer forfeit? And the answer is he forfeits $3 million because all of that money he obtained. He doesn't get to deduct his operating expenses. He doesn't get to deduct the salaries that he paid to his employees. Kagan, isn't that what ought to be decided on remand? I mean, there's no indication at all that this was the standard that was applied. And what we do know is that the other two defendants, if you add up what their forfeiture orders now are, there's $2.5 to $3 million left. So unless you're going to make – so the question is, does he become – is there some theory, and you're trying to give us one, on which he – there's a double payment of some of that money, essentially. Right? So these are – so these are two separate questions that I think have to be separated out. So collection is different than liability, right? The government has no defensible – no defensible interest in collecting more than 100 percent. Well, I understand that, but you're hypothesizing that he can be liable for having obtained money that someone else is being required to forfeiture for having obtained it. Right. And that is – and that is in my – That's because of what? It went through his bank account or what exactly? Because he's the mastermind farmer. And – and Gagnon and Hyness, the two – the two underlings – But – but it still matters whether he obtained the money. Right. And they – and they testified – well, first of all, I've got two responses to that. One is in the plea agreement, Excerpt of Record 225, Villegas admits that this $5,261,218 constitutes as derived from or traceable to gross proceeds that the defendant obtained directly or indirectly as a result of the crime. So he is – Directly or indirectly. So – I'm sorry? Directly or indirectly, and indirectly doesn't count anymore. No. It – directly or indirectly still counts, but he has to have obtained it. What – what Honeycutt says is you have to have obtained it. If the college student could obtain that $3,600 indirectly if he gets it from the farmer, directly if he gets it from the buyers, if he's collecting the money, it doesn't matter whether he gets it directly or indirectly, but he can only forfeit what he obtains. The – the farmer, the mastermind, Villegas in this case, he controlled all the money. All of the money came to the bank accounts that he controlled. There's testimony at the sentencing hearing about that. Both of the co-defendants testified at the – at the sentencing hearing that the money went into these bank accounts, that they took the deposits out in cash, gave them to him, to Villegas, and then he paid everybody in cash because they were his employees. So he – so the money is his. I mean, he paid it. He wouldn't have had to, but he did, right? So the money – he controlled, possessed, acquired these funds, and then he paid other people basically as operating expenses and salaries. So based upon your theory, the total forfeiture should not be $5 million, it should be $7 million-something, because the co-defendants each got about a million, plus the $5 million which he got adds up to $7 million. Is there something illogical about that? There's not. No, there isn't, and I'll tell you why. There is – there is nothing wrong with the judgments exceeding the 100 percent. Because more than – because more than one person had this dollar. First he had it as a result of his crime, and then Gagnon had it as a result of her crime. So there can be – so the – so the amount of judgment exceeds 100 percent. But the amount of collection – That's not a forfeiture anymore. That's a penalty that you're assessing on top of the forfeiture. Two responses. One is forfeiture is a criminal penalty, but more important, the government will not collect more than 100 percent. And that goes back – I mean, there's actually – there's a footnote in the Newman decision, which I know most of Newman has been superseded by this, but there's a footnote in the Newman decision that – that talks about how the government just as a practice, the government will not collect more than 100 percent of the conspiracy's proceeds, no matter what the various judgments say, whether they say join several. But as to Judge Block's hypothetical, you're not claiming that there was $7 million. You're claiming that the total amount was the amount of his forfeiture, and he then passed some of it on. Yes. And that the passing on is not – as long as it went into his bank account and he had control over it, the fact that he then passed it on to his co-conspirators doesn't matter. Is there anything in Honeycutt that supports that? Well, there — I mean, you still have co-conspirators. Mm-hmm. Right? And on your theory, you do – you're still arguing for essentially joint and several liability as to some of the money. I think that there's two responses. One is it isn't – it certainly isn't joint and several in the sense that the Honeycutt was concerned with joint and several liability, which was holding someone responsible for forfeiting money that they never obtained. Right? So we don't have that. There is something that's sort of akin to joint and several in that when the – when the mastermind farmer has to forfeit all $3 million and the college student has to forfeit the $3,600 that he got as a cut, those two together, yes, that's more than $3 million. Was this theory in your brief? No, not really. Well, what I – the argument in the brief is that he obtained all the money. Your argument in the brief was about the form not showing that it was – and largely about the appeal waiver and so on, but I – maybe I don't read well, but I didn't pick this up at all, and I – it strikes me that it's much better dealt with on remand applying Honeycutt when we don't know that anybody ever applied Honeycutt. Well, I'll tell you – I'll tell you why I think that that's not the case. We are – first of all, I do believe that in the plea agreement, not only did he admit that he obtained this money, but the – but the waiver in the plea agreement, that's at 231 to 233, is as comprehensive a forfeiture waiver as we can do. It's the same waiver that was in the Pollard decision. The difference in the Pollard decision – and what this Court said in Pollard is that that language – it's from our office, so it's the exact same language, right? That language waived his right to a hearing to determine how much of this money was his. It waived his Eighth Amendment claim. The only thing it didn't waive was the claim that the order was illegal. And the – and the issue about the order being illegal in Pollard was that the claim was that this offense of conviction doesn't allow for forfeiture. And if the offense of conviction just simply does not allow for forfeiture, then the forfeiture is an illegal sentence. What we have here is him saying, okay, there's no question that the offense of conviction allows for forfeiture. There's no dispute at the amount of the forfeiture. And the question is, how much of it is his? How much of it is he – is he responsible for? And if that is a legal issue rather than a factual issue, then every challenge to a sentence is a legal issue, not a factual issue, because if the – if the sentence is too high, then it's illegal, so therefore, I'm entitled to a hearing on that. And that's what the waiver precludes. Kagan. Which is the – oh, I see. Okay. Never mind. Go ahead. I – oh, I thought I – I thought my time was going up. It's going down. So we're on plain – we are – if the – even if the waiver doesn't apply, we're on plain error here. And the third prong of plain error is whether the defendant can make a reasonable showing that there's a reasonable possibility that the district court would not have been found by a preponderance that Villegas controlled all this money. And I would just – I would just suggest the – the sentencing transcript, in particular, Christine Gagnon's testimony from pages 112 to 127 of the excerpt of record, where she says he was in control of all of the money. We gave it to him, and then he gave us back our cut. He was our boss. We were his employees. The defendant admitted that he collected this money. He admitted that he collected the money. He admitted that he obtained the money, and he explicitly, knowingly, voluntarily waived any right to challenge that. I would say that if this does go back for any reason, the Court should vacate – or should – should instruct to vacate the sentence as a whole, because in – in partly, you know, we had a plea agreement. What we got out of it was not having to fight over forfeiture and not having to do this And we upheld our part of the bargain. And if this goes back, we should be free to argue for the custodial sentence that we think is warranted as well. Thank you. Thank you. Yes. Thank you, Your Honors. The government essentially argues that Honeycutt created some type of a carve-out when a person is a leader in a conspiracy offense. And that's – Let's start with the plea agreement, okay? Mm-hmm. Because I understand their first agreement – their first argument is that he, in fact – that in the plea agreement, that he obtained this money. The plea agreement only says what was derived from the proceeds. I mean, I just look back at it again. Villegas admits that the property listed in Section 11 is any property, real or personal, which constitutes or is derived from the yes or da-da-da. And then it gets to that the defendant obtained directly or indirectly as a result of violations. I think the – it also needs to be read in conjunction with the plea colloquy. And at the plea colloquy, the Court said, do you agree the property listed in the defendant's plea is traceable to violations of this law? And the defendant said yes. But the plea agreement is – so the plea – what's in the agreement isn't binding? I think there's a – it's just not clear that he agreed to what was – he directly actually obtained Honeycutt. Well, he didn't agree directly. He said directly or indirectly. Is that the difference? I think it's directly or indirectly. The indirectly, it's not clear what that would mean, especially in light of the change of the definition. You know, the plea agreement was done under the understanding of the old law, which was what was direct or indirectly from the proceeds, derived from the proceeds traceable. And that's what the Court went over at the plea colloquy at Excerpts of Record 270. Well, on your understanding of Honeycutt, if all the money went into his account, and depending on his relationship with these other people who were co-conspirators, but the representation is that their employee is – I don't know whether that's true or not – but if they were, can – if he then transmits it to them as essentially paying them for their services, is – did he obtain it or didn't he obtain it? Just because I – it passes through his accounts doesn't mean that he ended up obtaining that. He did – he – ultimately, part of that was obtained by his co-conspirators, who – one of which, Gagnon, was essentially his right-hand person. She was very much involved, as much as he was. And so just because someone, you know, passes through – again, that goes to kind of the Pinkerton conspiracy liability that Honeycutt overruled. It's just because someone is a leader of a conspiracy doesn't mean they are jointly and severally liable for – in forfeiture standards. Now, restitution is different. You know, restitution, the defendants, you know, are jointly and liably – jointly and severally liable to the victims. And there is a restitution order here for the full amounts, but forfeiture is for disgorgement of tainted funds. So it must be proven which funds he actually obtained, and not just which funds passed through his accounts, but which funds he ultimately ended up with. And that's why the forfeiture order is illegal. It exceeds the substantive statutory requirements below. This is not just a factual issue. It's that the actual legal standard was never applied. And that's what differentiates here. And that's what makes the plea waiver not bar this issue on appeal. And so we ask for limited remands to correct the forfeiture order, which is not tied to any other aspect of the sentence. Everything else the government bargained for was maintained. He did not appeal the leadership enhancement, as was bargained for in the plea agreement. He's not appealing restitution. He's not appealing supervised release or conditions. All that remains, unfortunately, what happened is that a new case came out before sentencing that wasn't addressed. And so that's what plain error review can catch. And precedent allows this Court to set a fact. Judge Gould, from your perspective, and I realize the government has a different point of view on this, but would there be anything wrong with vacating the forfeiture order provision and remanding that with instructions that the district court reassess forfeiture in light of Honeycutt and make a determination as to what your client obtained? That would be perfectly acceptable. That's what we're requesting, Your Honor. Thank you. As I understand it, or at least my question is, therefore, without deciding this legal question that the government has now raised, I think, for the first time as to whether or if the money went through his bank account and he paid other people essentially for services, how that would be. Correct, Your Honor. That could be what he actually obtained under Honeycutt can be litigated or negotiated at a hearing below under the correct legal standard. All right. Thank you both. United States v. Villegas is submitted. We will go to United States v. Hall. We'll take a short break.
judges: Gould, Berzon, Block